1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   GERALD COLE,                          ) Case No.: 1:12-cv-01411 - LJO - JLT
                                           )
12            Plaintiff,                    ) FINDINGS AND RECOMMENDATIONS
                                           ) REMANDING THE ACTION PURSUANT TO
13       v.                                ) SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
                                           ) DIRECTING ENTRY OF JUDGMENT IN FAVOR
14   CAROLYN W. COLVIN,                     ) OF PLAINTIFF GERALD COLE, AND AGAINST
     Acting Commissioner of Social Security, ) DEFENDANT CAROLYN COLVIN, ACTING
15                                          ) COMMISSIONER OF SOCIAL SECURITY
                                           )
16            Defendant.                    )
                                           )
17   _____ )

18          Gerald Cole ("Plaintiff") asserts he is entitled to supplemental security income under Title XVI

19   of the Social Security Act.  Plaintiff seeks judicial review of the decision of the administrative law

20   judge ("ALJ"), who concluded Plaintiff was not disabled.  For the reasons set forth below, the Court

21   recommends the action be **REMANDED** for further proceedings.

22                              **PROCEDURAL HISTORY**

23          Plaintiff filed an application for supplemental security income on May 3, 2010, which was

24   denied by the Social Security Administration initially on October 21, 2009, and again upon

25   reconsideration on February 28, 2011.  (Doc. 11-3 at 18).  After requesting a hearing, Plaintiff testified

26   before an ALJ on March 28, 2011.  *Id.*  The ALJ found Plaintiff was not disabled under the Social

27   Security Act, and issued an order denying benefits on February 9, 2012.  *Id.* at 18-27.  The Appeals

28   Council denied Plaintiff's request for review of the ALJ's decision.  *Id*. at 2-4.  Therefore, the ALJ's

                                           1

1  conclusion that Plaintiff was not disabled became the final decision of the Commissioner of Social

2  Security ("Commissioner") on June 26, 2012.

3  **STANDARD OF REVIEW**

4  District courts have a limited scope of judicial review for disability claims after a decision by

5  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

6  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

8  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

9  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

10  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

13  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

14  must be considered, because "[t]he court must consider both evidence that supports and evidence that

15  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16  **DISABILITY BENEFITS**

17  To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

18  engage in substantial gainful activity due to a medically determinable physical or mental impairment

19  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

20  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

21  his physical or mental impairment or impairments are of such severity that he is not
22  only unable to do his previous work, but cannot, considering his age, education, and
   work experience, engage in any other kind of substantial gainful work which exists in
23  the national economy, regardless of whether such work exists in the immediate area in
   which he lives, or whether a specific job vacancy exists for him, or whether he would
24  be hired if he applied for work.

25  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

26  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

27  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

28  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

2

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.      Relevant Medical Opinions**

On October 12, 2009, Dr. Madireddi performed a consultative internal medicine evaluation as part of Plaintiff's prior application for benefits.  (Doc. 11-8 at 38-41).  Dr. Madireddi noted that, due to scar tissue, Plaintiff had "some amount of difficulty with range of motion of the shoulders" and was "unable to extend [his elbows] completely."  *Id.* at 39.  In addition, he found Plaintiff's fine and gross manipulative movements were "slightly impaired in his left hand."  *Id.* at 40.  Dr. Madireddi opined Plaintiff was "certainly capable of some productive work," because he could sit for six hours in an eight-hour day, stand and/or walk for six hours in an eight-hour day.  *Id.* at 41.  Also, he opined, Plaintiff "should be able to lift 25 lbs. frequently and 50 lbs infrequently."  *Id.*  According to Dr. Madireddi, Plaintiff did not have postural limitations, though he may have "some difficult raising his arms above the level of his shoulders and abducting them."  *Id.*  Dr. Madireddi believed Plaintiff's "condition [was] unlikely to worsen in the next 12 months."  *Id.*

Dr. Jackson completed a physical residual functional capacity assessment on October 21, 2009.  (Doc. 11-8 at 42-49).  Dr. Jackson opined Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day.  *Id.* at 43.  Dr. Jackson believed Plaintiff did not have any postural or visual limitations.  *Id.* at 43-44.  However, Plaintiff had a limited ability to push and pull, and to reach in all directions.  *Id.*  Further, Dr. Jackson opined Plaintiff must avoid even moderate exposure to extreme heat, but could be exposed to extreme cold.  *Id.* at 45,

3

Dr. Amritpal Pannu performed a consultative physical examination on January 28, 2010.  (Doc. 11-8 at 57-61).  Plaintiff "complain[ed] of heat and cold intolerance and contractures of hand."  *Id.* at 58.  In addition, Plaintiff reported he was unable to lift his shoulders and suffered from depression.  *Id.*  Dr. Pannu noted Plaintiff suffered burns covering approximately 40 percent of his body in 2000, had been diagnosed with hypertension and diabetes mellitus in 2007, and had a history of hypothyroidism and Hepatitis C.  *Id.*  Dr. Pannu determined Plaintiff had a grip strength of 38 pounds in his right hand, and 40 pounds in his left hand.  *Id.* at 59.  Plaintiff had a range of motion of 100/150 in his shoulders with forward flexion and 120/150 degrees of abduction.  *Id.* at 60.  According to Dr. Pannu, Plaintiff had the "ability to sit/ stand and walk for six to eight hours total in an eight-hour day with breaks," "lift 20 pounds frequently," and "walk, bend and stoop normally."  *Id.* at 61.  Further, Dr. Pannu determined:

> [Plaintiff] is limited in his capacity to lift above shoulders and work requiring raising arms above shoulders.  He can not [sic] perform fine manipulations with [his] left hand.  There are environmental limitations.  He will not be able to work in extremes of heat or cold environment.

(Doc. 11-8 at 61).  Because Plaintiff had "serious issues with depression and post traumatic stress disorder," Dr. Pannu believed Plaintiff would benefit from a "psyche evaluation."  *Id.*

Dr. Roger Fast completed a physical residual functional capacity assessment and case analysis on February 1, 2011.  (Doc. 11-9 at 24-30).  Dr. Fast opined Plaintiff had the ability to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk with normal breaks for at least six hours in an eight-hour day, and sit for about six hours in an eight hour day.  *Id.* at 25.  Plaintiff had the ability to occasionally climb ladders, ropes, and scaffolds; and an unlimited ability to push, pull, handle (gross manipulation) and feel.  *Id.* at 25-26.  However, Plaintiff was limited to occasional fine manipulation, or fingering, with his left hand.  *Id.* at 26.  Further, Dr. Fast determined Plaintiff had environmental limitations and must avoid even moderate exposure to extreme cold and extreme heat.  *Id.* at 27.  Dr. Fast concluded Plaintiff was able to perform medium work with restrictions for his left hand and reaching overhead.  *Id.* at 30.

On February 19, 2011, Dr. Ekram Michiel performed a consultative psychiatric examination.  (Doc. 11-9 at 31-34).  Plaintiff reported he was suffering from post-traumatic stress disorder after being

4

in a fire.  *Id.* at 31.  Also, Dr. Michiel noted Plaintiff reported he had "been stabbed twice," "hit by a baseball bat to break [his] legs one time," and "witnessed [his] father being shot."  *Id.*  As a result, Plaintiff said he "live[d] in fear."  *Id.*  Dr. Michiel observed Plaintiff had a "goal-directed, guarded" thought process and his "attention and concentration was intact."  *Id.* at 33.  Dr. Michiel determined Plaintiff suffered from an anxiety disorder and a depressive disorder as "comorbid illness[es] of post-traumatic stress disorder."  *Id.*  Dr. Michiel opined Plaintiff was "unable to carry out an extensive variety of technical and/or instructions," but was "able to maintain attention and concentration to carry out simple repetitive job instructions."  *Id.*

On February 28, 2011, Dr. Murillo completed a psychiatric review technique and mental residual functional capacity assessment.  (Doc. 11-9 at 36-49).  Dr. Murillo opined Plaintiff was not significantly limited in his ability to understand, remember, and carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or workweek without interruptions from psychologically-based symptoms.  *Id.* at 36-37.  Further, Dr. Murillo opined Plaintiff was not significantly limited in all areas of social interaction and adaptation.  *Id.* at 37.  Dr. Murillo concluded Plaintiff had "mild" restriction of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  *Id.* at 47.

**B.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on December 20, 2011.  He reported he had a tenth grade education, and did not have any vocational training.  (Doc. 11-3 at 40).  Plaintiff reported he was unable to lift his arms high, and that it was difficult "to pick things up and stuff" due to the burn injuries he had suffered in 2000.  *Id.* at 45.  Plaintiff stated he had "a bad knee," which "just gives out."  *Id.* at 46.  In addition, Plaintiff reported he felt worthless and depressed, and heard voices "once or twice a day."  *Id.* at 48.  He said his mind raced, and he was unable to concentrate.  *Id.* at 49.

He estimated he was able to walk a block before he needed to rest, and that he could stand for "10 to 15 minutes" before he needed to sit.  (Doc. 11-3 at 47).  Further, Plaintiff believed he was able to sit "about an hour" before needing to stand.  *Id.*  Plaintiff testified he was able to pick up small objects such as a pen, but would have problems with picking up a full glass because both of his hands

5

1    were weak.  *Id.* at 47-48, 51.

2          Vocational expert Cheryl Chandler ("VE") testified at the administrative hearing.  The ALJ

3    asked the VE to consider "a hypothetical person of the same age, education, [and] work background" as

4    Plaintiff.  The individual was able to "lift and carry 50 pounds occasionally, 25 pounds frequently, sit,

5    stand or walk six [hours[ with occasionally climbing ladders, ropes and scaffolds, no overhead reaching

6    and occasional fine manipulation with a non-dominate left hand."  *Id.* at 54.  Further, the individual was

7    limited to "simple routine tasks."  *Id.*  The VE opined such an individual would be able to perform

8    work including gardening jobs, *DOT* 405.687-010; recreational attendant, *DOT* 341.683-010; and

9    counter retail clerk, *DOT* 369.477-010.[1]

10         Next, the VE considered an individual who was able to lift and carry 20 pounds occasionally

11   and 10 pounds frequently, with the same postural and had limitations.  The VE opined such a person

12   was able to perform work in the national economy, such as storage facility rental clerk, *DOT* 295.367-

13   026; agricultural sorter, 529.687-186; and agricultural worker, *DOT* 408.687-010.  *Id.* at 54-55.

14         Third, the ALJ asked the VE to consider an individual who could have "no repetitive or static

15   neck movements," and was unable to perform "forceful gripping or grasping."  (Doc. 11-3 at 55).  In

16   addition, the person was limited to "occasional fine fingering, feeling, and gross handling."  *Id.*  The

17   VE believed such an individual was able to work in the national economy.  *Id.*

18         Plaintiff's counsel asked the VE to reconsider the limitations first articulated by the ALJ, but

19   with the additional factor that the worker must "avoid even moderate [exposure to] extreme heat or

20   cold."  (Doc. 11-3 at 55).  The VE reported the worker would be unable to perform gardening or

21   recreational attendant work "because that tends to be more outdoor[s]."  *Id.* at 56.  However, the VE

22   believed the worker would be able to work as a counter retail clerk.  *Id.*

23   **C.    The ALJ's Findings**

24         Pursuant to the five-step process, the ALJ noted Plaintiff had not engaged in substantial gainful

25   activity after the application date of May 3, 2010.  (Doc. 11-3 at 20).  At step two, the ALJ determined

26

27         [1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training
     Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v.*
28   *Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may
     be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

1   Plaintiff's severe impairments included: status post-burns with skin grafts, left knee degenerative joint

2   disease, left elbow degenerative joint disease, and major depression.  *Id.*  However, Plaintiff did not

3   have an impairment, or combination of impairments, that met or medically equaled a Listing, including

4   Listings 8.08, 1.02, and 12.04.  *Id.*  Next, the ALJ determined:

5   > [Plaintiff] has the residual functional capacity to perform light work as defined in 20
    > CFR 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently;
6   > stand, sit, and walk for 6 hours in an 8-hour day; occasionally climb ladders, robes, and
    > scaffolds; no overhead reaching; [and] occasional fine manipulation with [his] non-
7   > denominate left hand, simple routine tasks

8   (Doc. 11-3 at 21).  Based upon Plaintiff's residual functional capacity, the ALJ determined Plaintiff

9   could work as a storage rental clerk, agricultural sorter, and agricultural worker.  *Id.* at 26.  Because

10  Plaintiff was able to perform work in the national economy, the ALJ concluded Plaintiff was not

11  disabled as defined by the Social Security Act.  *Id.* at 27.

12  ### DISCUSSION AND ANALYSIS

13          Plaintiff asserts the ALJ erred by (1) failing to contact Plaintiff's treating physician to obtain a

14  medical source statement and (2) failing to include all the limitations established in the record in

15  Plaintiff's residual functional capacity.  (Doc. 16 at 7-10).  On the other hand, Defendant argues the

16  ALJ had no duty to contact Plaintiff's treating physician, and "properly considered the medical

17  evidence of record in determining Plaintiff's residual functional capacity." (Doc. 19 at 8, 10) (emphasis

18  omitted).  Defendant concludes the ALJ's decision "is supported by substantial evidence, free from

19  legal error, and should be affirmed."  *Id.* at 3.

20  **A.     Duty to develop the record**

21          The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop

22  the record and to assure the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443

23  (9th Cir. 1983).  However, the law imposes a duty on the ALJ to develop the record only in limited

24  circumstances.  20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical

25  history, re-contact medical sources, and arrange a consultative examination if the evidence received is

26  inadequate for a disability determination).  Thus, the duty to develop the record is "triggered only when

27  there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

28  evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).

7

Here, there were no conflicts or ambiguities to be resolved, and ALJ did not find the record was insufficient to make a disability determination.  Consequently, the ALJ's duty to develop the record was not triggered.  *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not find the medical report was inadequate to make a disability determination); *Mayes*, 267 F.3d at 459-60.  Because the ALJ did not have a duty to develop the record, Plaintiff's assertion that the ALJ erred in failing to contact his treating physician is without merit.

**B.      The ALJ's evaluation of the medical evidence**

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In addition, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).  Thus, the courts apply a hierarchy to the weight afforded to the opinions of physicians.  Here, because there is not an opinion from a treating physician, the opinions of the physicians who examined Plaintiff should be given the greatest weight.

Here, the ALJ gave "[s]ignificant weight" to the opinion of Dr. Pannu, an examining physician.  (Doc. 11-3 at 24).  Nevertheless, Plaintiff contends the ALJ erred in his analysis of the opinion, because Dr. Pannu "limited Plaintiff . . . to no work in extremes of hot and cold and no fine manipulation with the left hand," and these limitations were not adopted by the ALJ in her residual functional capacity ("RFC") determination.  (Doc. 16 at 9) (citing Doc. 11-8 at 61).  According to Plaintiff, "The ALJ gave no reasons to reject Dr. Pannu's findings about range of motion limitations and claw fingers in the joints and fingers of the left hand and no reasons to reject environmental limitations regarding exposure to extremes of hot and cold."  *Id.* at 10.

On the other hand, Defendant contends the ALJ "properly found that these limitations did not need to be included in [the] RFC."  (Doc. 19 at 11).  Defendant asserts that "there were conflicting

opinions which the ALJ needed to resolve, as Dr. Madireddi did not assess any environmental limitations, Dr. Jackson noted only that Plaintiff should avoid moderate exposure to extreme heat, and Dr. Fast opined that Plaintiff should avoid moderate exposure to extreme cold and heat." *Id.* (citing Doc. 11-8 at 41, 45; Doc. 11-9 at 27).  Defendant contends the ALJ rationally concluded Plaintiff had no environmental limitations based upon these opinions, and the conclusion should be given deference. *Id.* (citing *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)).

Significantly, the ALJ acknowledged Dr. Pannu's opinion that Plaintiff had "heat and cold intolerance." (Doc. 11-3 at 24).  Dr. Pannu's opinion was contradicted by Dr. Madireddi (who did not find any environmental limitations), and Dr. Jackson (who opined Plaintiff should avoid moderate exposure to extreme heat, but not extreme cold).  When there is conflicting medical evidence, as there is here, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  In so doing, the ALJ must set forth specific and legitimate" reasons, supported by substantial evidence in the record, to reject the controverted opinion of an examining physician such as Dr. Pannu.  *Lester*, 81 F.3d at 830; *see also Thomas*, 278 F.3d at 958-59.   Here, however, the ALJ did not discuss the conflicting medical evidence, and failed to identify any reason for rejecting Dr. Pannu's opinion that Plaintiff would "not be able to work in extremes of heat or cold environment."  Therefore, the ALJ erred.[2]

## C.    Vocational expert testimony

Defendant asserts that "even if the additional physical limitations were included in the ALJ's RFC finding, Plaintiff would still be able to perform jobs existing in significant numbers in the national economy and would be found not disabled," because "[t]he vocational expert testified that an individual of Plaintiff's age, education, work experience, and RFC could work as a storage rental clerk…, agricultural sorter.., and agricultural worker."  (Doc. 19 at 10).

The Commissioner may establish a claimant can work in the national economy through the testimony of a vocational expert, who may "testify as to (1) what jobs the claimant, given his or her

---

[2] Moreover, it does not seem a rational conclusion that Plaintiff had *no* environmental limitations, given that three of the four physicians assessed some degree of environmental limitations, including the only physician to examine Plaintiff during the relevant time period.  Thus, the ALJ's finding that Plaintiff does not have environmental limitations cannot be upheld by the Court.  *See Allen*, 749 F.2d at 579; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony. *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.* "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Here, the VE was not questioned regarding the environmental limitations when she responded Plaintiff could perform light work as a "storage facility rental clerk"—which was a subset of "counter clerk—agricultural sorter, and agricultural worker. However, Plaintiff's counsel asked the VE to "take hypothetical number one"—which involved *medium* rather than *light* work—and consider an individual who must "avoid even moderate extreme heat or cold." (Doc. 11-3 at 56). The VE responded Plaintiff would be unable to perform the work as a gardener or recreational attendant, but "[t]he counter rental clerk is fine." *Id.* Because the VE believed Plaintiff could not work as a gardener if he was required to avoid moderate exposure to extreme heat and cold, it flows logically that he would not be able to work as an agricultural sorter or worker. On the other hand, there is no information regarding what exposure to extreme heat or cold, if any, is required for work as a storage facility rental clerk, and whether Plaintiff could perform this work with the environmental limitations identified by Dr. Pannu. The VE simply wasn't asked about this position.

Because the ALJ failed to articulate specific, legitimate reasons for rejecting the findings of Dr. Pannu that Plaintiff must avoid exposure to extreme cold and heat, these limitations should have been incorporated into the hypothetical question posed to the vocational expert. *See Robbins*, 466 F.3d at 886 (9th Cir. 2006). Therefore, the testimony of the vocational expert does not support the conclusion that Plaintiff could perform work in the national economy.

10

**D.      Remand is appropriate in this action**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to properly reject Dr. Pannu's opinion, or in the alternative, incorporate Dr. Pannu's opinion into the RFC. In addition, the ALJ failed to address the limitations set forth by Dr. Pannu in the hypothetical questions posed to the vocational expert. Without environmental restrictions, the vocational expert opined Plaintiff could perform work a storage-facility rental clerk, agricultural sorter, and agricultural worker. However, there is no information in the record regarding the exposure to extreme heat or cold that these jobs would require. Therefore, the matter should be remanded for the ALJ to address Plaintiff's environmental limitations and whether such limitations preclude Plaintiff from work in the national economy.

## FINDINGS AND RECOMMENDATIONS

The ALJ erred in assessing rejecting portions of Dr. Pannu's opinion, and in failing to incorporate Plaintiff's limitations into the RFC. In addition, the ALJ failed to pose a proper hypothetical question to the vocational expert. As a result, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate on these matters, the Court declines to address the remaining issues related to the ALJ's evaluation of the medical evidence raised by Plaintiff in his opening brief.

11

Accordingly, **IT IS HEREBY RECOMMENDED**:

1.    This matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and

2.    The Clerk of Court be DIRECTED to enter judgment in favor of Plaintiff Gerald Cole and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the date of service of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within 14 days of the date of service of the Objections.

IT IS SO ORDERED.

Dated:   **October 9, 2013**                            **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE